# United States Court of Appeals for the Federal Circuit

---

**GREEN EDGE ENTERPRISES, LLC,**

*Plaintiff/Counterclaim Defendant-Appellant,*

**v.**

**RUBBER MULCH ETC., LLC AND RUBBER RESOURCES, LTD., LLP,**

*Defendants/Counterclaimants-Cross Appellants,*

**and**

**GROUNDSCAPE TECHNOLOGIES, LLC,**

*Defendant/Counterclaimant,*

**v.**

**INTERNATIONAL MULCH COMPANY AND MICHAEL MILLER,**

*Counterclaim Defendants-Appellees,*

**and**

**JUDY SMITH AND LEE GREENBERG,**

*Counterclaim Defendants.*

---

2009-1455, -1479

---

Appeals from the United States District Court for the Eastern District of Missouri in Case No. 02-CV-566, Magistrate Judge Terry I. Adelman.

Decided:  September 7, 2010

JOE D. JACOBSON, Green Jacobson, P.C., of Clayton, Missouri, argued for plaintiff/counterclaim defendant-appellant.  With him on the brief was ALLEN P. PRESS.

RONALD D. FOSTER, Ronald Foster, P.C., of South Bend, Indiana, argued for defendants/counterclaimants-cross appellants.

JENNIFER E. HOEKEL, Senniger Powers LLP, of St. Louis, Missouri, argued for counterclaim defendants-appellees.  With her on the brief was B. SCOTT EIDSON.

Before RADER, *Chief Judge*, and LOURIE and BRYSON, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Green Edge Enterprises, LLC ("Green Edge") appeals from the decision of the United States District Court for the Eastern District of Missouri granting summary judgment of invalidity of U.S. Patent 5,910,514 (the "'514 patent") for violation of the best mode requirement. *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, No. 4:02CV566, 2008 U.S. Dist. Lexis 23378 (E.D. Mo. Mar. 25, 2008) ("*Best Mode Op.*").  Rubber Mulch and Rubber Resources cross-appeal from the court's dismissal of their claim of trademark invalidity for lack of a case or controversy.  *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 509 F. Supp. 2d 814 (E.D. Mo. 2007) ("*Trademark Dismissal*").  Rubber Resources cross-appeals from the court's dismissal of its Lanham Act claim for failure to

prove damages. *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, No. 4:02CV566, 2009 U.S. Dist. Lexis 53411 (E.D. Mo. June 24, 2009) ("*Lanham Act Dismissal*"). We reverse in whole or in part on all three issues and remand.

BACKGROUND

A. '514 Patent Claims

Green Edge owns the '514 patent and sued Rubber Mulch and Rubber Resources, among others, for infringement. The '514 patent claims a synthetic mulch that is colored with a "water based acrylic colorant" to imitate natural mulch. For example, claim 1 reads as follows:

> 1. A synthetic mulch material sized, shaped, and *colored to imitate a natural mulch*, wherein said synthetic mulch is comprised of:
>
> a) a plurality of rubber particles, with the rubber selected from the group consisting of natural polymers and synthetic high polymers, with said rubber particles having an outer surface *designed and dimensioned to look like natural mulch* selected from the group consisting of pea gravel, wood chips, and tree bark, and a length ranging between about 1/16 inch and about 8 inches and a width ranging between about 1/16 inches and about 2 inches; and,
>
> b) an amount of *water based acrylic colorant* added in an amount equal to between about 3% and about 10% by weight of said rubber particles, with said colorant coating said rubber particles thereby forming said synthetic mulch.

'514 patent col.5 l.62–col.6 l.15 (emphases added). The specification states that the colorant "can be selected from a variety of different coloring systems, as long as the colorant is available in at least earth tone colors, readily adheres to rubber, and does not wash off the rubber when contacted by water." *Id.* at col.4 l.64–col.5 l.3. However, according to the specification, "[t]he most preferred colorants are water based acrylic systems such as the colorant systems sold under the name 'VISICHROME', by Futura Coatings, Inc. of Hazlewood, Mo." *Id.* at col.5 ll.4–7. Claim 3 of the '514 patent recites "[t]he synthetic mulch of claim 1 wherein said colorant is a water based acrylic called VISICHROME." *Id.* at col.6 ll.19–20.

At the district court, the parties agreed that there did not exist a colorant system sold by Futura Coatings, Inc. ("Futura") under the name "Visichrome." Instead, Green Edge had used a product that Futura sold under the product code "24009." Green Edge asserted, however, that it had believed the colorant system to be called "Visichrome" based on a letter that it had received from Jeffrey Jarboe, Futura's vice president, in July 1997. *Best Mode Op.*, 2008 U.S. Dist. Lexis 23378, at *12. In that letter, Jarboe stated that "[t]he Futura 'Visichrome' colorant system is designed to be a user friendly system. The infinite colors available are packaged as a single component water based acrylic system." J.A. 250. The letter then discussed how the "'Visichrome' colorants" would be used to coat the rubber particles used by Green Edge. *Id.* However, before the district court, Jarboe could not remember why he used the term "Visichrome" in reference to the colorant system. *Best Mode Op.*, 2008 U.S. Dist. Lexis 23378, at *12.

In March 2008, the district court granted Rubber Mulch and Rubber Resources summary judgment of invalidity of the '514 patent for failure to disclose the best

mode of the invention, pursuant to 35 U.S.C. § 112, paragraph 1. *Best Mode Op.*, 2008 U.S. Dist. Lexis 23378. The court found that "Visichrome," the only water-based acrylic colorant disclosed in the specification, did not exist, despite having been referenced in Jarboe's letter. *Id.* at *11–14. The court further held that Green Edge had concealed the best mode by disclosing "a misleading, non-existent name instead of the number," when no similar product was available on the market. *Id.* at *14. The court therefore held the '514 patent invalid based on Green Edge's failure to disclose the best mode of coloring the rubber particles.

In its opinion, the district court declined to address Rubber Mulch and Rubber Resources' argument for anticipation based on U.S. Patent 5,543,172 ("Jakubisin"). *Id.* at *8–9. In fact, the court had previously denied summary judgment of anticipation, obviousness, indefiniteness, and nonenablement of the '514 patent in an opinion dated January 10, 2007. *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, No. 4:02CV566, 2007 U.S. Dist. Lexis 1939 (E.D. Mo. Jan. 10, 2007) ("*Denial of SJ of Anticipation*"). In that opinion, the court noted that anticipation is a question of fact for the jury to determine, and that Rubber Mulch and Rubber Resources would have to prove by clear and convincing evidence that the "unconsolidated fall zone material" of Jakubisin would "imitate[ ] natural mulch," as required by the claims of the '514 patent. *Id.* at *13. The court also stated that "a jury could find differences between the functions and the manufacturing of the products." *Id.* at *13–14. The court additionally denied summary judgment that the claims of the '514 patent were anticipated by others' products, as the parties had produced conflicting evidence such that a jury could conclude that the products did not anticipate the water-based acrylic colorant system or did not imitate

natural mulch. *Id.* at \*14–15. The court denied summary judgment of obviousness because Rubber Mulch and Rubber Resources' claim chart was uncorroborated and there was a lack of evidence that the prior art resembled natural mulch or was colorfast. *Id.* at \*16–17.

In its January 2007 decision, the court also denied summary judgment of indefiniteness, based on the existence of factual questions. *Id.* at \*17. Finally, the court denied summary judgment with respect to enablement, reasoning that Rubber Mulch and Rubber Resources had "failed to submit clear and convincing evidence that a person cannot obtain a water based acrylic colorant from Futura in lieu of the years of experimentation that [they] assert would be required." *Id.* at \*20.

In July 2008, after the district court had disposed of all claims relating to the validity of the '514 patent, counterclaim defendants International Mulch Company and Michael Miller (collectively, "International Mulch") terminated a license with Green Edge for the '514 patent, and Green Edge then demanded that International Mulch cease manufacture of its product. *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, No. 4:02CV566, slip op. at 1 (E.D. Mo. Nov. 26, 2008) ("*Realignment Op.*"). In August 2008, International Mulch moved to realign itself with Rubber Mulch and Rubber Resources in asserting that the '514 patent was invalid. *Id.* at 1–2. The court granted the motion, reasoning that International Mulch and Green Edge now had opposing interests in the validity of the '514 patent. *Id.* at 3.

## B. Trademark Claims

Green Edge also owns the trademark "RUBBERIFIC MULCH" and alleged in its complaint that Rubber Mulch had infringed the mark, based on Rubber Mulch's use of the words "Rubber Mulch." International Mulch, the

assignee of the trademark, had previously sent Rubber Mulch a cease and desist letter accusing it of trademark infringement, stating that "RUBBER MULCH" was confusingly similar to "RUBBERIFIC MULCH" and that such use was likely to confuse the public. *Trademark Dismissal*, 509 F. Supp. 2d at 819. Rubber Resources also printed the words "Rubber Mulch" on its products. In the present case, Rubber Mulch and Rubber Resources together counterclaimed for a declaratory judgment of noninfringement and invalidity of the "RUBBERIFIC MULCH" mark and included International Mulch, the assignee, in their counterclaims.

In March 2007, the district court granted International Mulch summary judgment, finding no case or controversy regarding Rubber Mulch and Rubber Resources' counterclaims of noninfringement and invalidity of the trademark. *Id.* at 820. The court found that International Mulch had not told Rubber Resources to cease using any mark and held that Rubber Resources therefore failed to establish an actual controversy. *Id.* at 818. The court then found that Rubber Mulch had had a reasonable apprehension of litigation with International Mulch but had not demonstrated a definite intent to continue to use "Rubber Mulch" as a trademark, instead planning to use it as descriptive of its product. *Id.* at 819–20. As an alternative holding, the court noted that neither Rubber Mulch nor Rubber Resources had presented evidence to show invalidity of the mark. *Id.* at 820.

Later, in June 2008, the district court ordered each party to submit a status report on its remaining claims. *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, No. 4:02CV566, 2008 U.S. Dist. Lexis 55402, *2 (E.D. Mo. July 22, 2008) ("*Rubber Mulch Dismissal*"). In July 2008, when Rubber Mulch had not responded to the order, the court dismissed without prejudice all of Rubber Mulch's

counterclaims, specifically including the already-dismissed counterclaims of trademark noninfringement and invalidity. *Id.* at *3.

## C. Lanham Act Claims

Among its counterclaims, Rubber Resources[1] also asserted a Lanham Act claim for unfair trade practices against, among others, Green Edge and International Mulch. J.A. 396 (amended counterclaim of June 22, 2005). International Mulch was at the time the exclusive licensee of the '514 patent. Rubber Resources alleged that Green Edge and International Mulch had engaged in unfair trade practices, including asserting the '514 patent in bad faith. J.A. 397. Rubber Resources stated that its counterclaim was for "Unfair Competition in violation of 15 U.S.C. 1125." J.A. 396. Under 15 U.S.C. § 1125(a), a provision of the Lanham Act, a person who makes false representations in connection with goods, with a likelihood of causing confusion, "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

In its prayer for relief, Rubber Resources requested that a "constructive trust be imposed upon [the] Green Edge Parties' profits in favor of Rubber Resources," J.A. 398, having defined the "Green Edge Parties" as including Green Edge and International Mulch Company,[2] J.A.

---

[1] Rubber Mulch joined Rubber Resources in asserting the Lanham Act violation in their amended counterclaim. We do not address Rubber Mulch's participation in the Lanham Act counterclaim, however, because Rubber Mulch does not join Rubber Resources' appeal from the district court's Lanham Act decision.

[2] Although Miller was not included in the amended counterclaim, he was apparently added to the suit sometime before International Mulch answered the counterclaim on September 6, 2005, as he was included in

396–97.  Rubber Resources also requested "any damages [it had] sustained," "exemplary damages," and "such other relief as the Court deem[ed] just and proper." J.A. 398.

In July 2007, the district court addressed a motion for summary judgment by Green Edge that Rubber Resources had failed to disclose its damages calculation under Fed. R. Civ. P. 26(a).  *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, No. 4:02CV566 (E.D. Mo. July 2, 2007) ("*2007 Damages Op.*").  Rule 26(a) states that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed."  Rule 37(c)(1) further states that a party's failure to provide the information required by Rule 26(a) means the party may not use that information at trial "unless the failure is substantially justified or is harmless."  In its order, the court stated that, "[g]iven the fact that the case has been pending for 5 years and that the Court has issued several Case Management Orders and entertained numerous discovery motions, . . . Rubber Resources ha[s] demonstrated substantial justification for not previously disclosing damages." *2007 Damages Op.*, slip op. at 8 (citing Rule 37(c)(1)).  The court further relied on Rubber Resources' claim that it could "present evidence of sales made to people who relied on the Green Edge Parties' representation of patent infringement by other manufacturers and their being the sole source of the non-infringing product." *Id.*  In a footnote, the court noted that "[i]f, however, Green Edge believes that Rubber Mulch cannot establish damages at trial, Green Edge may present such argument in a Motion in Limine for the Court's review." *Id.*, slip op. at 8 n.4.

---

International Mulch's answer.  *See* Countercl. Defs.' Answer to Countercl.-Pls.' First Am. Countercl., Sept. 6, 2005.

In May 2009, just before trial, Green Edge and International Mulch presented a motion in limine to preclude Rubber Resources from introducing any evidence at trial relating to damages for the alleged Lanham Act unfair competition violation. *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, No. 4:02CV566, 2009 U.S. Dist. Lexis 41302, *2 & n.1 (E.D. Mo. May 14, 2009) ("*2009 Damages Op.*"). The district court granted the motion, reasoning that Rubber Resources had "failed to disclose any information regarding its theory of damages until it filed its trial brief and proposed jury instructions, less than three weeks before trial. Additionally, Rubber Resources continue[d] to decline to provide even an estimated calculation." *Id.* at *5–6. According to the court, Rubber Resources had agreed throughout discovery that a profit and loss summary from Green Edge would suffice for a damages calculation, but just before trial, it represented for the first time that such a summary was insufficient, and it could not disclose calculated damages under Rule 26(a). *Id.* at *6–9. The court also stated that Rubber Resources had belatedly disclosed that it sought "lost profits, disgorgement of International Mulch's and Green Edge's profits, loss of good will, and treble damages." *Id.* at *19. Finally, the court found that Rubber Resources' actions were not substantially justified, and that permitting new evidence would not be harmless in light of the many years the case had been pending and the fact that it was the "eve of trial." *Id.* at *20.

In June 2009, the district court dismissed Rubber Resources' Lanham Act unfair competition counterclaim because, after its second damages opinion, *2009 Damages Op.*, 2009 U.S. Dist. Lexis 41302, Rubber Resources was unable to show any damages. *Lanham Act Dismissal*, 2009 U.S. Dist. Lexis 53411 at *7. Thus, Rubber Resources was unable to demonstrate a prima facie case of

unfair competition, and the court held that summary judgment was appropriate as a matter of law. *Id.*

## D.  The Appeal

Green Edge timely appealed from the district court's grant of summary judgment of invalidity of the '514 patent.  Rubber Mulch and Rubber Resources cross-appealed from the court's dismissal of their trademark invalidity claim.  Rubber Resources also cross-appealed from the court's dismissal of its Lanham Act claim.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A.  The District Court Erred by Invalidating the '514 Patent

Green Edge argues that the district court erred in granting summary judgment of invalidity for failure to describe the best mode.  Green Edge asserts that it did not know the composition of the proprietary colorant; all it knew was the name "Visichrome," which it believed to be the product name, plus the product code number.  According to Green Edge, there was no evidence that the patentees subjectively intended to conceal anything.  Further, according to Green Edge, when it approached another manufacturer about supplying colorants to make the claimed invention, that manufacturer found no undue

experimentation necessary to supply colorants. Green Edge also argues that only claim 3 could possibly be invalid for a best mode violation because it is the only claim that recites "Visichrome."

Rubber Mulch and Rubber Resources[3] respond that the inventors believed that only the colorant designated by the code 24009 would perform the required functions,

---

[3] International Mulch also spends a full fifteen pages of its brief asserting the invalidity of the '514 patent. However, International Mulch waived any separate argument in favor of summary judgment of invalidity. International Mulch did not actually argue the invalidity of the '514 patent to the district court. In fact, International Mulch terminated its license agreement and moved for realignment, and the court issued its decision *Realignment Op.*, No. 4:02CV566, all after the court had fully decided all of the summary judgment issues relating to the validity of the '514 patent. Moreover, International Mulch had control over the timing of its termination of the license agreement and could have terminated it in time to present invalidity arguments to the district court. *Cf. Balgowan v. New Jersey*, 115 F.3d 214, 217 (3d Cir. 1997) (holding that a party could be added during appeal when it could not control the timing of when it knew of its claim). International Mulch could also have argued invalidity at any time, without terminating the license agreement. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007). Thus, we do not address International Mulch's separate arguments on appeal, as they have been waived.

However, we do not conclude that the district court abused its discretion in granting International Mulch's motion to realign itself with Rubber Mulch and Rubber Resources with regard to the validity of the '514 patent, after International Mulch terminated its license agreement with Green Edge. *See Realignment Op.*, slip op. at 2. Thus, International Mulch may assert non-waived arguments for the invalidity of the '514 patent on remand, as it is permissibly aligned with Rubber Mulch and Rubber Resources.

but the inventors did not disclose it. According to Rubber Mulch and Rubber Resources, the best mode can be violated without a subjective intent to conceal. Rubber Mulch and Rubber Resources further assert that proof of a particular manufacturer's ability to practice the claimed invention is not sufficient to show satisfaction of the best mode requirement, rendering that evidence irrelevant. They also respond that each of the claims, not just claim 3, fails the best mode requirement because they all recite a colorant.

Rubber Mulch and Rubber Resources further respond that, as alternative bases for affirmance, the district court erred in denying summary judgment of invalidity based on anticipation, obviousness, indefiniteness, and non-enablement. Thus, according to Rubber Mulch and Rubber Resources, this court can affirm the district court's decision by reversing its denial of summary judgment on those other grounds, still finding the patent invalid on summary judgment. Green Edge replies that the district court correctly denied summary judgment on those grounds, as genuine issues of material fact exist regarding all of those issues.

We agree with Green Edge that the district court erred in granting summary judgment of invalidity based on a best mode violation, and that the court did not err in denying summary judgment on the other invalidity grounds; thus, summary judgment of invalidity was improper. Regarding the best mode requirement, 35 U.S.C. § 112, paragraph 1, provides that "the specification . . . shall set forth the best mode contemplated by the inventor of carrying out his invention." Thus, inventors may not receive the benefit of the right to exclude while at the same time concealing from the public preferred embodiments of their inventions. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002).

"Compliance with the best mode requirement is a question of fact." *Ajinomoto Co. v. Int'l Trade Comm'n*, 597 F.3d 1267, 1272 (Fed. Cir. 2010). The sufficiency of the disclosure of the best mode is determined as of the filing date. *See Application of Glass*, 492 F.2d 1228, 1232 (CCPA 1974).

Determining compliance with the best mode requirement is a two-pronged inquiry. First, the court must determine whether, at the time the patent application was filed, the inventor possessed a best mode of practicing the claimed invention. *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996). The first prong is subjective; it focuses on the inventor's personal preferences as of the application's filing date. *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1286 (Fed. Cir. 2000). Second, if the inventor has a subjective preference for one mode over all others, the court must then determine whether the inventor "concealed" the preferred mode from the public. *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 928 (Fed. Cir. 1990). The second prong asks whether the inventor has disclosed the best mode and whether the disclosure is adequate to enable one of ordinary skill in the art to practice the best mode of the invention. *Id.* The second inquiry is objective; it depends upon the scope of the claimed invention and the level of skill in the relevant art. *Id.*

In this case, the parties do not seriously dispute that the inventors of the '514 patent possessed a best mode of practicing the claimed invention, *viz.*, using Futura's 24009 product as the claimed colorant. Green Edge, however, asserts that it disclosed that mode; it did not conceal it from the public. The question thus relates to the second inquiry, whether Green Edge disclosed its best mode when it disclosed a material by a name that did not

exist and failed to identify the material that it actually used in its own work.

We have held that an inventor using a proprietary product in his preferred embodiment must, "at a minimum, . . . provide supplier/trade name information in order to satisfy the best mode requirement." *U.S. Gypsum*, 74 F.3d at 1214 (citing *Chemcast*, 913 F.2d at 929). The purpose of the requirement of a supplier and a trade name is to allow the public to practice the inventor's best mode at the time of filing. Thus, in *Chemcast*, 913 F.2d at 929–30, and *U.S. Gypsum*, 74 F.3d at 1213–16, we held that the inventor had not disclosed the best mode because the inventor in each of those cases had not provided a description sufficient to allow a skilled artisan to know or carry out the best mode. In those cases, the identity of the material in question was a trade secret of the supplier, and the inventor did not know its identity, so it could not objectively disclose the best mode. In this case, the facts are similar, but there is a genuine issue as to whether the name "Visichrome" was descriptive of a sufficiently specific product so that one seeking to obtain and practice the best mode of the invention, product number 24009, would have succeeded.

The disclosure might have, at the time the application was filed, been specific enough to describe the colorant so as to enable a person of ordinary skill in the art to make the claimed product using Futura's 24009 product. The application for the '514 patent was filed in October 1997, and Jarboe's letter describing Futura's "Visichrome" colorant system was written in July 1997. Thus, despite Jarboe's inability to remember why he used the term "Visichrome" in his letter, *see Best Mode Op.*, 2008 U.S. Dist. Lexis 23378, at *12, it is at least possible, even likely, that in October 1997, at the time of filing, someone contacting Futura to obtain the "Visichrome" colorant

system would have received a response similar to Jarboe's letter of that July. Indeed, the district court stated that the name "Visichrome" combined with the ability to contact Futura "would have enabled a person to obtain the colorant." *Id.* at *15–16 n.1. The colorant described in the letter appeared to be a specific formulation that could be made in a variety of different colors. Thus, the name "Visichrome" supplied in the '514 patent would not have described the precise color preferred by the inventors, but it could have allowed a person to obtain a product with the best formulation. The person contacting Futura could then have requested the "earth tone colors" described in the '514 patent. *See* '514 patent col.5 l.2.

We therefore agree with Green Edge that there was a genuine issue of material fact relating to whether the best mode was disclosed, precluding summary judgment of invalidity. The Jarboe letter, viewed in a light most favorable to Green Edge, shows that at the time of filing, a person of ordinary skill could have contacted Futura, inquired of the identity of Visichrome, and been led to the 24009 product, which the parties do not dispute constituted the best mode. Such a determination should be made by the district court, not by this court.

We further conclude that the district court did not err in not granting summary judgment of invalidity on the separate grounds of anticipation, obviousness, indefiniteness, or nonenablement. The record is insufficient for us to determine that the court should have granted summary judgment. "Whether a patent is anticipated under section 102(b) is a question of fact. On summary judgment, all justifiable inferences are made in favor of the non-movant." *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Here, we agree with the district court that there were genuine issues of material fact regarding anticipation, as Rubber Mulch and Rubber

Resources must prove that the "unconsolidated fall zone material" of Jakubisin, *see* Jakubisin Abstract, is "designed . . . to look like natural mulch," *see* '514 patent col.6 ll.4–5. Rubber Mulch and Rubber Resources argue that Jakubisin inherently anticipates the '514 patent because it discloses rubber particles that otherwise contain the claimed features and therefore must inherently "look like natural mulch." While Jakubisin does appear to disclose a product that is similar to the claimed mulch, we cannot say as a matter of law that it anticipates the '514 patent, especially given the district court's reluctance to so hold and the lack of analysis of the other claim limitations.

Similarly, we agree with the district court that there were genuine issues of material fact precluding summary judgment of invalidity based on Green Edge and other retailers' earlier sales of mulch. The district court found Rubber Mulch and Rubber Resources' evidence insufficiently corroborated and found conflicting evidence, which requires resolution by a jury. *See Denial of SJ of Anticipation*, 2007 U.S. Dist. Lexis 1939, at *14–15. Thus, the prior sales do not justify our holding the '514 patent invalid as a matter of law.

We further agree with the district court that genuine issues of material fact precluded it from granting summary judgment of obviousness. A patent is invalid when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is a question of law based on underlying questions of fact. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1348 (Fed. Cir. 2000). The underlying factual inquiries in an obviousness analysis include: "(1) the scope and content of the prior

art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999). The district court held that there were such factual questions, precluding summary judgment of obviousness. For example, according to the court, Green Edge provided evidence that, "while other synthetic mulch products were available, they did not resemble natural mulch." *Denial of SJ of Anticipation*, 2007 U.S. Dist. Lexis 1939, at \*17. As the district court stated, "a jury should determine whether there are differences between the prior art and the claimed invention, among other factual inquiries." *Id.*

Rubber Resources and Rubber Mulch argue that the claims of the '514 patent would have been obvious based on the combination of U.S. Patent 5,396,731 ("Byrne") and Jakubisin, as Byrne discloses a pad made from rubber granules that "is desired to appear mulch-like." Byrne col.4 l.39. However, Rubber Mulch and Rubber Resources did not assert Byrne in their May 2006 motion for summary judgment of obviousness. *See* Mem. of P. & A. in Supp. of Defs. Rubber Mulch Etc. and Rubber Resources Ltd's Mot. for Summ. J., May 15, 2006. Thus, the district court could not have relied on Byrne at that time. Rubber Mulch and Rubber Resources later asserted Byrne, in their July 2007 renewed motion, *see* Post Markman Ruling Mem. of P. & A. in Supp. of Defs. Rubber Mulch Etc. and Rubber Resources Ltd's Mot. for Summ. J., July 2, 2007, but the district court did not address those obviousness assertions, as it instead granted summary judgment on the best mode violation, *Best Mode Op.*, 2008 U.S. Dist. Lexis 23378, at \*17. Without any record from the district court on that issue, we cannot determine whether the '514 patent's claims would have been obvious to one of ordinary skill in the art. We must therefore

remand for the district court to determine the obviousness question in the first instance. *See Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 935 (Fed. Cir. 2003) (holding that, without any of the necessary factual determinations underlying an obviousness inquiry, the appellate court could not undertake any review in the first instance).

We also decline to determine as a matter of law that the '514 patent is indefinite or nonenabled. Definiteness, under 35 U.S.C. § 112, paragraph 2, and enablement, under paragraph 1, are both questions of law with underlying factual determinations. *See Janssen Pharmaceutica N.V. v. Teva Pharms. USA, Inc. (In re '318 Patent Infringement Litig.)*, 583 F.3d 1317, 1323 (Fed. Cir. 2009) ("Enablement is a question of law we review without deference. We review the factual issues underlying enablement for clear error." (citations omitted)); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344–45 (Fed. Cir. 2007) (stating that a showing of indefiniteness requires clear and convincing evidence). The district court denied summary judgment of invalidity as to both issues based on insufficient evidence. *Denial of SJ of Anticipation*, 2007 U.S. Dist. Lexis 1939, at *17–21.

We will not undertake the indefiniteness and enablement inquiries in the first instance. The district court did not address Rubber Mulch and Rubber Resources' argument that the claim term "looks like" is indefinite. We have held that similar terms relating to appearance, if sufficiently defined in the specification, are not necessarily indefinite. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340–42 (Fed. Cir. 2003) (holding the term "vivid color appearance" not indefinite when the specification presented a formula for calculating the differential effect for a number of examples, which determined whether or not they had a "vivid colored appearance").

Thus, we leave to the district court the initial determination of the definiteness or indefiniteness of the term.

As for Rubber Mulch and Rubber Resources' assertion that the '514 patent does not enable making a product that "imitates natural mulch," the district court appropriately found that others' ability to obtain a claimed colorant from Futura or to make their own colorant precluded summary judgment of nonenablement. The district court incorrectly looked at enablement at the time of its decision, *see Denial of SJ of Anticipation*, 207 U.S. Dist. Lexis 1939, at \*20 (finding "no indication that, *nearly ten years after the issuance of the '514 patent*, any experimentation to recreate the colorant would be unduly extensive" (emphasis added)), rather than at the time of filing, *see Janssen*, 583 F.3d at 1323 ("Enablement is determined as of the effective filing date of the patent's application."). However, the court appropriately denied summary judgment because Green Edge's evidence might allow a jury to find the invention enabled at the time of filing. We therefore agree with Green Edge that we cannot uphold summary judgment of invalidity on the alternative ground that the claims were not enabled.

In sum, the district court erred in granting summary judgment of invalidity of the '514 patent as a violation of the best mode requirement. For the reasons stated above, we cannot affirm the court's decision on the alternative grounds of anticipation, obviousness, indefiniteness, or nonenablement. We therefore reverse the court's grant of summary judgment of invalidity and remand for further proceedings.

## B. The District Court Erred by
## Dismissing Rubber Mulch's
## Trademark Counterclaims

On cross-appeal, Rubber Mulch and Rubber Resources assert that the district court erred by dismissing their trademark counterclaims of noninfringement and invalidity of the "RUBBERIFIC MULCH" mark for lack of a case or controversy. Rubber Mulch argues that there was an actual controversy regarding the mark, as Green Edge had asserted an infringement claim against Rubber Mulch, and International Mulch, the mark's assignee, had sent Rubber Mulch a cease and desist letter. Rubber Resources argues that because it also intends to continue using its products containing the words "Rubber Mulch," the court has declaratory judgment jurisdiction over its counterclaim as well. Both parties also assert that there are unresolved issues regarding the mark's ownership, validity, and enforceability. Rubber Mulch and Rubber Resources further argue that there is a factual dispute as to whether Green Edge's amendment of its registration statement, changing the first use of "RUBBERIFIC MULCH" from October 1995 to October 1997, to avoid the on-sale bar in its application for the '514 patent, was undertaken in bad faith; thus, they argue, the issue is not ripe for summary judgment.

International Mulch and Green Edge respond that Rubber Mulch stated that it did not intend to use the term "RUBBER MULCH" as a trademark, resolving any previous dispute. International Mulch and Green Edge also argue that Rubber Mulch has no standing in this appeal because it abandoned the claims that were the subject of the appealed orders when it did not respond to the district court's June 2008 order requesting a status report. International Mulch and Green Edge both further respond that they had no dispute with Rubber Resources.

We conclude that the district court erred in dismissing Rubber Mulch's counterclaims as to the validity and enforceability of the "RUBBERIFIC MULCH" mark, but did not err in dismissing Rubber Resources' trademark counterclaims. The Declaratory Judgment Act provides the courts with jurisdiction over declaratory judgment actions when there is a justiciable case or controversy. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007) (citing 28 U.S.C. § 2201(a)). When such jurisdiction exists, a court "*may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a) (emphasis added). Thus, we review a court's legal determination whether there is declaratory judgment jurisdiction *de novo*, *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 900 (Fed. Cir. 2008), and we review its decision to exercise that jurisdiction for an abuse of discretion, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In this case, the court determined that there was no case or controversy, a decision that we review *de novo*.

A controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. The Supreme Court has held that, in the patent infringement context, there is not even a need for a party to have a "reasonable apprehension of suit." *See id.* at 132 n.11.

In this case, Rubber Mulch's trademark noninfringement and invalidity counterclaims were pled in response to Green Edge's trademark infringement claims against it. Thus, there was more than an apprehension of suit from Green Edge; Rubber Mulch had actually been sued. *A fortiori*, a party that has been sued for trademark infringement has established declaratory judgment juris-

diction to allege noninfringement and invalidity. To hold otherwise would prevent a defendant from raising defenses to the charge against it. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2761 (3d ed. 1998 & Supp. 2010) ("[E]ven if the [trademark owner] sues for infringement, defendant may counterclaim for a declaration of invalidity and noninfringement. In that way, the defendant is protected against the possibility that the [trademark owner] will dismiss the suit or that the infringement action will not resolve all of the issues between the parties.").[4] Rubber Mulch therefore properly established declaratory judgment jurisdiction with respect to Green Edge.

Rubber Mulch also properly established the court's declaratory judgment jurisdiction over its counterclaim against International Mulch. International Mulch had threatened Rubber Mulch with suit over the "RUBBERIFIC MULCH" trademark, asserting that, as the assignee of the mark, it had standing to sue. Under *MedImmune*, a threat of suit in the form of a cease and desist letter, in addition to other litigious conduct, is sufficient to confer declaratory judgment jurisdiction. *See Micron*, 518 F.3d at 901 (holding that, under *MedImmune*, declaratory judgment jurisdiction existed based on

---

[4] International Mulch asserted at oral argument that Green Edge is prepared to dismiss its trademark claims against Rubber Mulch. *See* Oral Arg. 21:06–18, June 11, 2010, *available at* http://oralarguments.cafc.uscourts.gov/mp3/2009-1455.mp3. However, even if that assertion were true, such a dismissal would not rob the court of its declaratory judgment jurisdiction over Rubber Mulch, as Rubber Mulch must remain "protected against the possibility that [International Mulch] will dismiss the suit." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2761.

a cease and desist letter plus defendant's suits against other manufacturers); *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000) (finding declaratory judgment jurisdiction based on trademark owner's cease and desist letter despite the fact that trademark owner offered to waive all trademark infringement and related claims), *overruled on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206–07 (9th Cir. 2006) (*en banc*). Here, International Mulch not only threatened suit, but it is the alleged assignee of Green Edge's trademark, and Green Edge already filed suit for infringement of that trademark. Thus, if International Mulch is found to be the legitimate assignee, only International Mulch has standing to sue for infringement. *See AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009) (stating that, in patent infringement context, "a suit for infringement ordinarily must be brought by a party holding legal title to the patent"). Moreover, International Mulch is already a party to this suit. Therefore, if Green Edge is ultimately found not to have standing to pursue its infringement claim, International Mulch may be in a position to be substituted for Green Edge as the real party in interest. *See Signal Int'l LLC v. Miss. Dep't of Transp.*, 579 F.3d 478, 487 (5th Cir. 2009) ("Although an action must be prosecuted by the real party in interest, '[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.'" (quoting Fed. R. Civ. P. 17(a)(3))). Such a possibility, especially given International Mulch's actual threat of suit in its cease and desist letter, constitutes a threat or controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

International Mulch's argument that Rubber Mulch did not intend to use the term "RUBBER MULCH" as a trademark is disingenuous. The district court found that Rubber Mulch intended "to continue using the term rubber mulch." *Trademark Dismissal*, 509 F. Supp. 2d at 820. International Mulch misinterprets Rubber Mulch's assertion that the term "rubber mulch" is descriptive; that assertion does not suggest that Rubber Mulch is not going to use the term but rather goes to either the invalidity or lack of infringement of the mark "RUBBERIFIC MULCH." Both grounds are defenses to a trademark infringement suit, but the existence of those defenses does not preclude a case or controversy. Indeed, Green Edge and International Mulch have both accused Rubber Mulch of infringing a valid trademark, which is the hallmark of an actual controversy. Because neither Green Edge nor International Mulch has conceded either invalidity or lack of infringement of its trademark, a case or controversy exists.

We also disagree with International Mulch and Green Edge's assertion that Rubber Mulch has no standing to appeal based on the district court's dismissal of Rubber Mulch's claims for failure to prosecute, *Rubber Mulch Dismissal*, 2008 U.S. Dist. Lexis 55402. The court first dismissed Rubber Mulch's trademark claims for lack of a case or controversy and then later dismissed all of Rubber Mulch's claims for failure to prosecute. At the time the court found a failure to prosecute, however, Rubber Mulch could not have prosecuted its trademark claims because those claims were no longer in the case, having previously been dismissed for lack of a case or controversy. Therefore, the court's dismissal of Rubber Mulch's claims for failure to prosecute cannot include the trademark claims. Rubber Mulch cannot be punished for failure to pursue claims that were then no longer in the case. For at least

that reason, Rubber Mulch has standing to appeal the court's dismissal of its trademark counterclaims.

Finally, no party addressed the district court's alternative holding that Rubber Mulch and Rubber Resources had not presented sufficient evidence to show invalidity. Given the court's cursory treatment of and all parties' failure to argue that point, we cannot affirm the dismissal on that alternative basis. We therefore hold that the district court erred in dismissing Rubber Mulch's counterclaims.

As for Rubber Resources' counterclaims of noninfringement and invalidity of the mark, we agree with International Mulch and Green Edge that there was no case or controversy giving the court declaratory judgment jurisdiction over Rubber Resources. Unlike Rubber Mulch, Rubber Resources had been neither sued nor threatened with suit. Rubber Resources' sole argument is that it uses the same term, "rubber mulch," for which Rubber Mulch was sued. Although we have found a pattern of litigation to be a factor favoring the existence of declaratory judgment jurisdiction, *see Micron*, 518 F.3d at 901, in this case Rubber Resources relies on a single suit, not a pattern. Furthermore, Green Edge, in one litigation, sued both Rubber Mulch and Rubber Resources for patent infringement and sued Rubber Mulch alone for trademark infringement. Presumably, if Green Edge had wanted to sue Rubber Resources for trademark infringement, it could have included that claim in the existing suit. Its failure to include a claim against Rubber Resources for trademark infringement, despite its claims of trademark infringement against Rubber Mulch and its other claims against Rubber Resources in the same case, indicated its lack of intent to sue Rubber Resources for trademark infringement. Thus, there was no case or

controversy with respect to Rubber Resources regarding its trademark counterclaims.

For the above reasons, we reverse the district court's holding of a lack of case or controversy with respect to Rubber Mulch for its counterclaims of trademark invalidity and lack of infringement against both Green Edge and International Mulch. We affirm the court's holding with respect to Rubber Resources.

## C. The District Court Abused Its Discretion by Precluding All Damages Evidence for the Lanham Act Counterclaims

Finally, on cross-appeal, Rubber Resources asserts that the district court abused its discretion by precluding Rubber Resources from presenting evidence regarding its Lanham Act unfair competition counterclaims. Rubber Resources argues that its sole burden at trial with respect to damages would be to prove Green Edge's sales, an amount to which the parties have stipulated. Rubber Resources adds that it could not have proven total damages because it did not know Green Edge's costs and expenses, evidence which Green Edge and International Mulch had the burden to produce. According to Rubber Resources, it stated its theory of damages in its amended counterclaim, seeking a constructive trust, damages, costs, and attorney fees. Rubber Resources also argues that it disclosed that its counterclaim was under the Lanham Act. Rubber Resources further contends that, three years before trial, the district court found Rubber Resources substantially justified in not providing the computation required by Fed. R. Civ. P. 26(a), and that "substantial justification" is law of the case. Rubber Resources finally argues that, instead of excluding its evidence, the court should have excluded Green Edge and

International Mulch's evidence of costs for failure to provide it during discovery.

Green Edge and International Mulch respond that, despite being warned by the district court, Rubber Resources never stated the type, or theory, of damages it sought. According to Green Edge and International Mulch, Rubber Resources did not even state that it sought damages under the Lanham Act. Green Edge and International Mulch argue that, to establish a prima facie case under the Lanham Act, Rubber Resources would have to prove its damages. Further, Green Edge and International Mulch assert that Rubber Resources has mischaracterized the court's earlier order as holding that its damages disclosures were adequate; in fact, the court warned that evidence might later be excluded. Finally, Green Edge and International Mulch respond that Rubber Resources stated that a sales summary would have been sufficient, and Green Edge produced a sales summary, so their production of evidence was sufficient.

We agree with Rubber Resources that the district court abused its discretion by excluding all of Rubber Resources' evidence of damages. "Whether proffered evidence should be admitted in a trial is a procedural issue not unique to patent law, and therefore we review the district court's decision whether to admit [evidence] under the law of the regional circuit," here the Eighth Circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003). The Eighth Circuit reviews the district court's decision to exclude evidence for abuse of discretion, reversing only if it "was based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (quotation marks omitted).

Federal Rule of Civil Procedure 26(a) states that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed." Rule 37(c)(1) further states that a party's failure to provide the information required by Rule 26(a) means the party may not use that information at trial "unless the failure is substantially justified or is harmless." *See also Trost*, 162 F.3d at 1008. In this case, the district court clearly erred in concluding that Rubber Resources had failed to provide a computation of every category of damages claimed. The court found that Rubber Resources had failed to disclose its theory of damages when, in fact, it had enumerated certain categories of damages in its amended counterclaim, *viz.*, Green Edge and International Mulch's profits, Rubber Resources' damages, and "exemplary damages," all under the Lanham Act, 15 U.S.C. § 1125. The Lanham Act enumerates the possible damages to which Rubber Resources might be entitled for unfair competition, providing that a violation under 15 U.S.C. § 1125(a) entitles the plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Furthermore, Rubber Resources and Green Edge had agreed upon a calculation of Green Edge's sales. Although a determination of Green Edge's profits requires subtracting its costs from its gross sales income, Green Edge must present its own evidence of its costs. *See id.* The district court acknowledged that the burden of proving damages is relaxed in Lanham Act cases, but stated that proof of damages is a separate requirement from disclosure of damages under Rule 26(a). *2009 Damages Op.*, 2009 U.S. Dist. Lexis 41302, at *13 n.9. However,

the court's distinction is not persuasive. The purpose behind the relaxed burden of proof, *viz.*, difficulty for the plaintiff to ascertain the amount of damages, *see id.*, cannot be served without similarly relaxing the burden of disclosure under Rule 26(a). Thus, contrary to the district court's second order, *2009 Damages Op.*, 2009 U.S. Dist. Lexis 41302, Rubber Resources should be permitted to present evidence of Green Edge's sales at trial to prove Green Edge's profits.

Rubber Resources does not argue that it presented a calculation of its damages or of the "exemplary damages" it sought, and the district court did not clearly err in excluding evidence of either of those forms of damages. However, should Rubber Resources prevail at trial, it is entitled to recover Green Edge's profits. Because Rubber Resources provided a stipulated calculation of Green Edge's sales, the court clearly erred in excluding all evidence of damages. We therefore reverse the court's exclusion of damages evidence, *2009 Damages Op.*, 2009 U.S. Dist. Lexis 41302. We also reverse the court's dismissal of Rubber Resources' Lanham Act claims for an inability to prove damages, *Lanham Act Dismissal*, 2009 U.S. Dist. Lexis 53411, as that dismissal was based on the clearly erroneous exclusion of all damages evidence, *2009 Damages Op.*, 2009 U.S. Dist. Lexis 41302.

We have considered the parties' remaining arguments and do not find them persuasive.

CONCLUSION

The judgment of the district court is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED**

COSTS

No costs.